### In re W. H. BLUMER & Co., Bankrupts.*

*(District Court, E. D. Pennsylvania. January 10, 1882.)*

1. BANKRUPTCY — TRANSFER OF BANK STOCK TO WIFE—ACCEPTANCE BY WIFE—EVIDENCE.

    A bankrupt, who was indebted to his wife, transferred to her name, shortly before his bankruptcy, certain bank stock. At the time of the transfer the stock had a market value above par, but immediately thereafter the bank went into liquidation and was found to be insolvent. The bankrupt testified that he told his wife of the transfer after the bank was discovered to be unsound, and that she said she would rather not have the stock. *Held*, that the evidence was not sufficient to show acceptance of the stock by the wife, and that its value could not be deducted from the claim proved by her against the bankrupt's estate.

2. SAME—PRESUMPTION AS TO ACCEPTANCE IN PAYMENT OR AS COLLATERAL.

    Whether, if the evidence had been held sufficient to establish acceptance of the stock, the latter must have been regarded as accepted in payment or as collateral security merely, *quære*.

Exceptions to report of register upon a proof of debt for $59,379.09, presented against the separate estate of Jesse M. Line, one of the partners of the firm of W. H. Blumer & Co., bankrupts, by his wife, Mary L. Line.

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

It appeared from the report of the register that the wife had been possessed of a separate estate at the time of her marriage, and that the husband had taken possession of and managed this estate, converting from time to time the securities of which it was composed, and appropriating the proceeds to his own use, or reinvesting them in his own name. The register found that Mrs. Line was a creditor to the extent of the principal of the securities thus converted.

The assignee in bankruptcy claimed that there should be deducted a credit of $13,000 for 100 shares of the stock of the First National Bank of Allentown, transferred by Jesse M. Line to his wife at a time when the market value of the shares was $130, although a few days thereafter, and shortly before the bankruptcy of W. H. Blumer & Co., the bank went into liquidation. As to this claim the register reported as follows:

"Mr. Line in his testimony also says that on the morning of the day the directors of the First National Bank of Allentown passed a resolution to go into liquidation (March 12, 1877) he told the cashier of that bank to transfer to his wife 100 shares of the stock of the bank which then stood in his name, the par value of which was $100 a share; that the cashier was busy that day and the next day, and when the cashier subsequently made the transfer he dated it on the tenth day of March, two days before the passage of the resolution of liquidation, and that he knew the actual date of the transfer by seeing the certificate. Upon being questioned whether, at the time he asked the cashier to make that transfer, he thought the stock had any worth, he answered that he considered it worth par and over, and that when the last transfer he knew of was made the market value of this stock was $130 a share, which was what he had paid for it, and that it retained that value down to the time of liquidation, but he did not know of any sales of the stock at that time. Mr. Line was at that time a director of the bank, and certainly had means of knowing the market value of its stock. He further said that he could not recollect when he told his wife that he had transferred the stock to her, but that it was when it was discovered that the bank was not sound, and that his wife told him she would rather not have it. Counsel for the assignee and for creditors opposed to the claim of Mrs. Line offered in evidence the record of a suit brought in the circuit court of the United States for the eastern district of Pennsylvania to April sessions, 1879, No. 55, by Henry Janderson, receiver of the First National Bank of Allentown, against Jesse M. Line (the bankrupt) and Mary L. Line, his wife, to recover $2,000, being 20 per cent. of the par value of the 100 shares of the capital stock of the said bank standing in the name of said Mary L. Line, assessed upon said shares by the controller of the currency of the United States on the tenth of May, 1878, in which suit a judgment was obtained in favor of the plaintiff. The record of this suit was admitted in evidence by the register."

The register further reported as follows:

"Respecting the transfer by Mr. Line to his wife of 100 shares of the capital stock of the First National Bank of Allentown, the register is of opinion and finds, upon the evidence herein referred to, that when the transfer was made the stock was selling in the market at $130 a share, or rather that that was its then market value, (par value, $100;) and that Mr. Line, in the exercise of his duty to his wife as her trustee for moneys of hers received and appropriated by him to his use, made such transfer to repay her in part for the money so used by him; and that when he did so he fully believed that the said stock was worth, in the market, $13,000, which amount he could then have obtained for it if he had so chosen. He testifies himself that it was not until after it was discovered that the stock had depreciated in value, or, to use his own words, 'that the bank was not sound,' that his wife disapproved of the transfer to her. That she must have known earlier of this transfer, and consented to it, scarcely admits of a doubt, considering the relations subsisting between them; and, if the bank had not failed, it is not at all probable there would have been any question as to her consent to and approval of the transfer. This sum of $13,000 should therefore be deducted from the debt claimed by her."

To this report Mrs. Line filed exceptions.

*P. K. Erdman* and *John Rupp*, for Mary L. Line.

*W. D. Luckenbach* and *Thos. B. Metzger*, for assignee.

BUTLER, D. J. When the exception filed by Mrs. Line was first heard, her counsel relied so confidently on the position that the bank stock (if accepted by her,) must be regarded as *collateral security* for her debt simply, leaving the original obligation or liability of her husband unaffected that the question of *acceptance* was scarcely referred to. This view seemed, virtually, to be acquiesced in by counsel on the other side. *Eby* v. *Hoopes*, 38 Leg. Int. 317, just published, was supposed to govern the case. On inquiry by the court whether the principle there involved was applicable to transfers, (by debtor to creditor,) of tangible property, such as horses, merchandise, bank stock, and the like, or only to transfers of bills, notes, bonds, and other similar promises and obligations to pay money, the case was again heard, and on this second hearing counsel for the exceptor contended, that there is no sufficient evidence of acceptance.

A careful examination of the case has satisfied me that this latter position is well taken. I have looked through the testimony in vain for any satisfactory evidence of such acceptance. Mr. Line testifies in substance that he did not inform her of the transfer until after the bank's failure, and that she then declined to accept. The register says, "That she must have know nearlier of the transfer, and con-

sented to it, scarcely admits of doubt, considering the relations between the parties." There is nothing whatever to support this inference, except the fact that the parties are husband and wife. This, standing alone, would be insufficient, even in the absence of the husband's testimony, just cited. He may have told her of it earlier than he states, or he may not. In the absence of his testimony, it would be little more probable that he did than that he did not. He seems to have taken possession of her property, and dealt with it as he pleased, without regard to her wishes or interests. When danger threatened, and he resolved to make such reparation as a transfer of the stock would afford, he may have informed her of it; but in view of the circumstances,—his embarrassment and excitement at the time, and the very brief period between the transfer and the bank's failure, —it is about as probable that he did not. To infer that he did, and that she accepted, against his sworn statement to the contrary, as a basis for charging her with $13,000, would certainly be too dangerous to be justifiable, in any view that can be taken of the case. We agree with the register that she would no doubt have accepted if informed before the bank's failure, and that she certainly would have availed herself of the benefit of the transfer if the stock had proved valuable. This, however, does not tend to prove that she was informed, and is, therefore, unimportant to the inquiry. The register's mind was doubtless influenced by the verdict of the jury, on this question, in the circuit court on another case. We have nothing to do, however, with that finding, and do not even know on what it was based. The record in that case is not evidence here.

This view of the facts renders a decision of the legal question unimportant. It may not, however, be improper to say, that if the case turned upon a solution of this question, Mrs. Line would be in great danger of having to account for the stock.